2020 IL App (1st) 191384

No. 1-19-1384

Opinion filed December 3, 2020

FOURTH DIVISION

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17 CR 4286 |
| JASON VAN DYKE, | ) ) ) | The Honorable Vincent M. Gaughan, |
| Defendant, | ) ) | Judge, presiding. |
| (Chicago Public Media, Inc., WLS Television, Inc.; WFLD Fox 32 Chicago, WGN Continental Broadcasting Company, Chicago Tribune Company, L.L.C., and Sun-Times Media, L.L.C., Intervenors-Appellants). | ) ) ) ) ) ) ) | |

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Hall and Lavin concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal involves the denial of access to the media in a criminal case. In the highly

publicized criminal case of *People v. Jason Van Dyke*, the trial court entered an "interim

decorum order" to manage trial publicity and the media to ensure that defendant Van Dyke

received a fair trial. The criminal defendant is not a party to the instant appeal.

¶ 2        Appellants Chicago Public Media, Inc.; WLS Television, Inc.; WFLD Fox 32 Chicago; WGN Continental Broadcasting Company; Chicago Tribune Company, L.L.C.; and Sun-Times Media, L.L.C. are not appealing the entry of the trial court's interim decorum order in this case—nor could they, since they previously moved to vacate only a modification of that order, and our supreme court swiftly granted their relief within 12 days after they requested a supervisory order.

¶ 3        The order appealed from in this case was entered posttrial, and it ordered certain documents to remain under seal. Three months after its entry and two months after this appeal was filed, the trial court ordered the 18 remaining sealed documents to be released with some redactions. However, the media appellants claim that the trial court lacked jurisdiction to grant any relief at this time.

¶ 4        For the following reasons we dismiss a part of this appeal for lack of jurisdiction, and we affirm in part.

¶ 5                                    BACKGROUND

¶ 6        This case stems from the shooting death of 17-year old Laquan McDonald by Chicago police officer Jason Van Dyke on October 20, 2014. Defendant Van Dyke was charged on November 24, 2015, with first degree murder and official misconduct.

¶ 7        On January 20, 2016, the trial court issued, without objection, an "Interim Decorum Order" that provided, in full:

        "It is the Order of this court that no attorney connected with this case as Prosecutor or Defense Counsel, nor any other attorney working in or with the offices of either of them, nor their agents, staff, or experts, nor any judicial officer or court employee, nor

any law enforcement employee of any agency involved in this case, nor any persons subpoenaed or expected to testify in this matter, shall do any of the following:

1. Release or authorize the release for public dissemination any purported extrajudicial statement of either the defendant or witnesses relating to this case;

2. Release or authorize the release of any documents, exhibits, photographs or any evidence, the admissibility of which may have to be determined by the Court;

3. Make any statement for public dissemination as to the existence or possible existence of any documents, exhibits, photographs or any evidence, the admissibility of which may have to be determined by the Court;

4. Express outside of court an opinion or make any comment of public dissemination as to the weight, value, or effect of any evidence as tending to establish guilt or innocence;

5. Make any statement outside of court as to the content, nature, substance, or effect of any statements or testimony that is expected to be given in any proceedings in or relating to this matter;

6. Make any out-of-court statement as to the nature, source or effect of any purported evidence alleged to have been accumulated as a result of the investigation of this matter.

7. This Decorum Order also incorporates Article VIII. Illinois Rules of Professional Conduct, effective January 1, 2010.

This Order does not include any of the following:

1. Quotations from, or any reference without comment to, public records of the Court in the case.

2. The scheduling and result of any stage of the judicial proceedings held in open court in an open or public session.

3. Any witness may discuss any matter with any Prosecution or Defense Attorney in this action, or any agent thereof, and if represented may discuss any matter with his or her own attorney.

Anyone in violation of this court order may be subject to contempt of court."

¶ 8     On February 3, 2017, the trial court modified the interim decorum order with an order that stated, in full:

"To be in compliance with the decorum order entered January 20, 2016:

IT IS HEREBY ORDERED that any documents or pleadings filed in this matter are to be filed in room 500 of the George N. Leighton Criminal Courthouse only. This order applies to the defense, special prosecutor, and any other party that may occasionally become involved in these proceedings. This procedure will remain in effect unless and until otherwise ordered by the court."

¶ 9     On March 8, 2018, the media appellants were granted leave to intervene in the Van Dyke case.

¶ 10    On May 11, 2018, they moved for a supervisory order in the Illinois Supreme Court to vacate the February 3, 2017, order. The media appellants' proposed supervisory order asked for the following relief:

"(1) That the February 2017 Decorum Order is vacated;

(2) That going forward, all motions, briefs, pleadings, and other judicial documents in this case shall be filed publicly in the Circuit Court Clerk's Office, subject to any properly supported motion to seal; and

(3) That in ruling on any such future motion to seal judicial records, or any motion to reconsider [the trial court's] earlier sealing of any previously filed judicial records, [the trial court] shall adhere to the governing First Amendment standards and enter specific, on-the-record judicial findings supporting suppression under those standards, or release such records in whole or in part, consistent with consideration of the least restrictive alternatives to complete suppression."

¶ 11 Twelve days after the media appellants filed their motion, our supreme court "[a]llowed" it and issued a supervisory order on May 23, 2018, that stated, in full:

"This cause coming to be heard on the motion of movants, Chicago Public Media, Inc., et al, due notice having been given to respondent, and the Court being fully advised in the premises:

IT IS ORDERED: Motion by Movants for a supervisory order. Allowed. The Circuit Court of Cook County is directed to vacate its February 3, 2017, order, directing that all documents and pleadings shall be filed in Room 500 of the George N. Leighton Criminal Courthouse only. All documents and pleadings shall be filed in the circuit clerk's office. The parties may move to file any document under seal." *Chicago Public. Media, Inc. v. Hon. Vincent M. Gaughan*, No. 123569 (Ill. May 23, 2018).

¶ 12 On May 24, 2018, the trial court entered an order (1) vacating its February 3, 2017, order; (2) requiring all filings to be made with the clerk of the court, with courtesy copies provided to the trial court on the same day; and (3) requiring a "filing party" to "first notify the opposing party of its intention" to file a document and "the nature of the document" to be filed in order "to afford the other party fair opportunity to request the document be sealed."

¶ 13    On August 7, 2018, the media appellants moved the supreme court again for a supervisory order, this time asking for an order directing the trial court (1) to unseal 35 documents sealed prior to the supreme court's May 23, 2018, supervisory order, unless the parties filed new and publicly filed motions to seal these documents, and (2) to vacate the trial court's May 24, 2018, order and require the public filing of all future requests under seal. On September 12, 2018, the supreme court issued an order stating that the media appellants' "motion for supervisory order is dismissed."[1]

¶ 14    Defendant Van Dyke's jury trial began on September 17, 2018, and his jury returned a verdict on October 5, 2018, finding him guilty of second-degree murder and aggravated battery with a firearm.

¶ 15    On October 26, 2018, the media appellants filed a motion titled a "Post-Trial Motion to Unseal Court Records," seeking to unseal court records then under seal and citing in support the Illinois Supreme Court's recent decision on October 18, 2018, in *People v. Zimmerman*, 2018 IL 122261 (denying media intervenors access to pretrial motions in a criminal case). Specifically, the media appellants sought the release of 99 documents, which they described on an attached list. To the extent that any records contained any sensitive information, the media appellants argued that they should be redacted. On January 14, 2019, the trial court continued the media appellants' motion for unsealing until after sentencing. Defendant Van Dyke was sentenced on January 18, 2019, and he filed a notice of appeal on February 8, 2019.[2]

---

[1]The order explained: "In this case, two Justices of this Court have recused themselves and the remaining members of the Court are divided so that it is not possible to secure the constitutionally required concurrence of four judges for a decision (Ill. Const. 1970, art. IV, sec. 3)." *Chicago Public Media, Inc. v. Hon. Vincent M. Gaughan*, No. 123880 (Ill. Sept. 12, 2018).

[2] On September 29, 2020, defendant Van Dyke moved to dismiss his appeal, which this court granted on October 9, 2020. *People v. Van Dyke*, No. 1-19-0398 (Oct. 9, 2020).

¶ 16        On February 28, 2019, Brandon Smith filed a motion as a "third-party journalist,"[3] seeking to intervene and to modify the 2016 interim decorum order, in order to permit the release of certain documents by the Chicago Police Department. The department had denied part of his Freedom of Information Act (FOIA) request based on the 2016 order. See 5 ILCS 140/1 *et seq.* (West 2018). On March 8, 2019, the media appellants filed a four-paragraph document stating that they "hereby join in" Smith's motion. In their concluding paragraph, they stated that they "seek the relief requested by Mr. Smith" and "adopt his arguments in support thereof."

¶ 17        On March 15, 2019, the media appellants filed a "Status Report Regarding [Their] Posttrial Motion to Unseal" which stated that the trial court had previously asked the State, defendant, and the media appellants to meet in order to reach an agreement on what documents should be released. That effort was largely successful, and the media appellants reported that neither the defense nor the State objected to the release of 87 court records and 2 transcripts and that only 21 records remained under dispute.

¶ 18        On April 5, 2019, the media appellants filed a proposed agreed order "Regarding [Their] Post-Trial Motion to Unseal Court Records." The proposed order stated that "[t]his matter" was "coming to be heard" on the media appellants' "Post-Trial Motion to Unseal Court Records" and was entered "by agreement" among the State, defendant Van Dyke, and the media appellants. In the order, the media appellants sought the release of 87 documents, as well as the transcripts, "including sidebar deliberations," of a May 10, 2018, hearing and "all

---

[3] Smith's motion did not identify a journal or an employer. According to his *alma mater*, Columbia College, he was a freelance journalist at the time. Jeremy Borden, *How a Little Known, Uber-driving Freelancer Brought the Lawsuit that Forced Chicago to Release a Police Shooting Video*, Colum. Journalism Rev. (Nov. 25, 2015), https://www.cjr.org/united_states_project/brandon smith_chicago_police_laquan_mcdonald.php [https://perma.cc/F5RU-3QZZ].

trial proceedings." On April 10, 2019, the trial court granted the proposed order in its entirety, adding only details about copying charges and that production in "10 days" meant "10 business days."

¶ 19 At a hearing on April 10, 2019, the parties discussed the remaining 21 documents in dispute, and the media appellants' attorney repeatedly asked the court to consider redacting them to permit release. The State objected to the release because the documents contained grand jury material and information concerning the juvenile victim, Laquan McDonald. When the court agreed with the State, the media appellants' attorney asked: "Would you please reconsider and consider redacting the grand jury information[?]" The media appellants argued that "the least restrictive means would warrant redactions if there's a reference to grand jury material."

¶ 20 On April 10, 2019, the trial court also entered an order (1) that denied Smith's motion to intervene and to modify the interim decorum order, (2) that modified the decorum order to permit city employees to answer certain questions about their e-mails and texts regarding the Laquan McDonald shooting, as Smith had requested, and (3) that denied the media appellants' motion to modify to the extent that they had joined in Smith's motion. Regarding the last item, the trial court stated at the hearing: "your motion to join is denied. How can they join anything that doesn't exist?" Smith's attorney and the trial court then had the following exchange:

"MR. TOPIC: I guess the question would there be—and I don't know whether they would do this. Would it be moot for them to file the same motion that we filed because you went through the merits of it, and so I get the sense—

THE COURT: Well, then they can file that. And we'll hear it at some time later on down the road, maybe."

However, at this point in time, the trial court ruled that the media appellants "joined in a nullity," since the court did not allow Smith to intervene. To Smith, the trial court stated: "I'm not ruling on your motion [to vacate] because it's not before me because I denied your right to intervene." To the media appellants' counsel, the trial court stated that their motion "[g]oes down with his motion to intervene."

¶ 21       On May 9, 2019, the media appellants moved the trial court "to reconsider or clarify its April 10, 2019[,] denial of [the media appellants'] request, through their joinder in a motion by would-be intervenor Brandon Smith, to modify the January 20, 2016," order, on the ground that the order was being used by the city and the Chicago Police Department as a ground for withholding documents from FOIA requests. As part of its motion to reconsider, the media appellants asked the court to vacate the 2016 order or, "at a minimum," modify it to state that it is not a basis for third parties to withhold documents.

¶ 22       On May 23, 2019, the trial court entered a written order regarding "the Post-Trial Motion of [the media appellants] for access to certain materials." The order, which indicated that it had been prepared by the media appellants' counsel, stated that the trial court had previously granted access to "certain agreed-upon materials," that "[t]here remained 21" documents "that were the subject" of objections by the State, that a list of those 21 documents was attached to the order, and that "Document Nos. 1 through 17 and Document No. 20" were to remain under seal. At the hearing on May 23, 2019, the media appellants had withdrawn their request to unseal documents 18, 19, and 21, which concerned United States Department of Justice (DOJ) employees. With respect to these three documents, the order directed the special prosecutor to request them from DOJ.

¶ 23        At the May 23 hearing, the media appellants' attorney again suggested redacting the 18 documents so that they could be released:

> "APPELLANTS' ATTORNEY: Before court this morning, [the special prosecutor] told me that he was prepared to make redactions and tender to the Court redacted versions of some of the materials relating to the motions to dismiss the indictment based on alleged misconduct ***. And it's actually what I suggested back on April 10th *** And we favor going forward with a redaction process to see if we can avoid an appeal under those issues."

These 18 documents included documents concerning defendant Van Dyke's motions to dismiss the indictment based on misconduct (dismissal documents). With respect to these dismissal documents, the special prosecutor explained how he had redacted information that was not subject to disclosure:

> "SPECIAL PROSECUTOR: What I have done since April 10th is gone through those documents and redacted any reference to Grand Jury testimony. In one of those documents there is a complete transcript of the Grand Jury proceedings attached[. I am] proposing that that is removed. The identity of any witnesses or anyone who appeared before the Grand Jury, to redact all of that information in a way to kind of compromise. What would remain in those documents would be allegations that were made by the defense in the motions to dismiss. *** [O]ne proposed resolution would be to redact identities, actual quotations from Grand Jury testimony, summaries and inferences drawn from the testimony before the Grand Jury. *** So that's what I discussed with [the media appellants' attorney] before court this morning."

The special prosecutor argued that that the trial court had previously found that "there was not a scintilla of evidence to support the allegations" that defendant Van Dyke had made in these documents and, thus, no reason to keep them sealed.

¶ 24 Defendant Van Dyke's attorney objected to what the State said, and the trial court replied: "Maybe you should take that up on appeal on Mr. Van Dyke's case." The trial court then found that its sealing order would stand. It is these 8 documents, later released in the redacted form described above, that are at issue on appeal.

¶ 25 Also at the May 23, 2019, hearing, the trial court orally found, with respect to the media appellants' motion to reconsider, that, once the court had denied Smith's motion[4] to intervene, there was nothing for the media appellants to join and, thus, the media appellants' joinder motion "fell with his motion." The court explained that it had entered an order giving Smith "all [he] wanted" and, "if he's done, you're done." When the media appellants argued, pursuant to their motion to reconsider, that the court should vacate the 2016 interim decorum order, the special prosecutor responded: "But there was no motion by Counsel to vacate the decorum order that was before this court on April 10th, *** [o]nce [the trial court] denied [Smith's motion to intervene." The special prosecutor argued that, since there had been "no new filing" by the media appellants, "other than a motion to reconsider what was denied on April 10th," there was no motion for the court now to resolve. The trial judge agreed that this was his "interpretation" and "now you can't file. All right. That's it." The court found: "your motion to litigate—I mean to vacate the decorum order is denied, and I'm setting it *nunc pro tunc* to

---

[4] During the hearing, the parties referred to Smith's motion as "Topic's" motion. Matthew Topic was Smith's attorney.

the other ruling." The media appellants did not object to the court's *nunc pro tunc* order, entering the denial as of April 10, 2019.

¶ 26    When the trial court inquired if there was anything else, the media appellants replied: "We'd like a final order." The State responded that it felt like they were "repeating" themselves, and the court agreed. The media appellants repeated "all we want is a final order." The trial court stated orally in court: "Here is my final order, all right, denied. That's it." When the media appellants' attorney asked the trial court, "[s]o we're done with you?" the court replied: "Never." The media appellants' attorney persisted, stating that he "just want[ed] clarity in the record that there [were] no issues left" from the media appellants, and the trial court agreed.

¶ 27    On June 21, 2019, the media appellants filed a notice of appeal alleging that the trial court's May 23, 2019, "order" was a final order, since it "resolv[ed] all pending matters raised by Intervenors-Appellants in the above captioned [Van Dyke] case." The media appellants stated that they were appealing the trial court's May 23, 2019, order and "all matters [that] merged into the May 23 Final Order, including: (1) the April 10, 2019[,] Order denying [the media appellants'] motion to modify the Decorum Order, and (2) the Decorum Order entered on January 20, 2016)." The notice alleged that this court had jurisdiction "[p]ursuant to Illinois Supreme Court Rule 303, or if deemed appropriate, Rule 307(a) and/or Rule 605."

¶ 28    On July 2, 2019, Smith moved again to intervene and also for an *in camera* inspection of four documents being withheld by the Chicago Police Department from a FOIA response, on the basis of the trial court's 2016 interim decorum order. Smith had filed suit in chancery court against the Chicago Police Department challenging its FOIA response to him. Smith v. Chicago Police Department, No. 16 CH 03254 (Cir. Ct. Cook County). On May 3, 2019, the

chancery court issued an order finding: "this Court defers to [the trial court], in the first instance, to determine whether disclosure of the four documents would be prohibited by his Order." *Smith*, No. 16 CH 03254 (Cir. Ct. Cook County, May 3, 2019). None of the media appellants were a party to Smith's chancery suit.

¶ 29    On July 31, 2019, the trial court issued an order stating that the four withheld documents were, in fact, prohibited from disclosure by the trial court's 2016 order, that the 2016 order was modified to allow for the production of these four documents, and that the matter was continued to August 14, 2019.

¶ 30    On August 14, 2019, the special prosecutor in the Van Dyke case moved the trial court to lift the interim decorum order entered in 2016. The notice of motion stated that it was e-mailed to the media appellants' attorneys and that the matter was scheduled for September 4, 2019. The media appellants did not move in the circuit court or in this court to stay these proceedings. See Ill. S. Ct. R. 305(d) (eff. July 1, 2017) (a motion for a stay may be made to the reviewing court upon a showing "that application to the circuit court is not practical").

¶ 31    In his motion, the prosecutor argued that the 2016 order applied "to a mere 18 items that currently remain under seal" and that it had no other continuing effect, since it depended on a " 'determination' " of " 'admissibility' " by the trial court in the underlying Van Dyke case, which was then over. The motion observed that the State had already redacted these 18 items to comply with state law and that the media appellants had indicated at a prior hearing that they favored redaction as an alternative to appeal. The motion included a proposed order that stated (1) "[t]he Special Prosecutor's Motion to Lift the Decorum Order entered on January 20, 2016[,] is granted" and (2) "[t]he 18 items currently under seal shall be released in redacted form."

¶ 32        On August 14, 2019, the special prosecutor and counsel for the city appeared in front of the trial court. The prosecutor informed the court that he had "sen[t] notice out" concerning his motion and he had received no objections from defendant or the media appellants or "any of the other individuals who have petitioned to intervene." The trial court observed:

> "And I think a reasonable explanation to that would be other than the third-party interven[o]rs, the other ones, if they—my understanding is that they appealed my orders about sealing 18 of the documents. And so if they come in here and start saying some things, then they might—well, they wouldn't reinvest jurisdiction, so they'd be kicked out of the Appellate Court."

¶ 33        On September 4, 2019, the trial court signed the proposed order in its entirety, without changes. The transcript indicates that Van Dyke's counsel was present but the media appellants' attorneys did not attend. Explaining the redactions, the special prosecutor stated that he had

> "redacted only information that contains personal identifiable information about La[q]uan McDonald that would be—that is protected by the Juvenile Court Act and then transcripts or quotations of testimony before the Grand Jury including the identity of any witness that would have testified before any of the Grand Jury proceedings in the underlying criminal case."

Counsel for the City of Chicago, who was also present, stated that the City supported the prosecutor's motion.

¶ 34        On August 23, 2019, the media appellants filed a motion in the appellate court, claiming: "There are 17 documents at issue in this appeal that are currently under seal in the Circuit Court." The media appellants listed the 17 documents by title and filing date and

14

requested an order directing the circuit court of Cook County to transmit these 17 documents under seal to the appellate court, which we granted.

¶ 35　　　　Briefing in the instant appeal began six months later, with the first brief filed January 8, 2020. The appellate record in this case was received in 12 different e-filings, over the course of nine months, with the documents often not in chronological order. We want to remind the parties that we do read the record and perform our own independent review and analysis of it, and that it is the appellants' responsibility to provide "a," *i.e.*, one, coherent and complete table of contents. Ill. S. Ct. R. 342 (eff. Oct. 1, 2019).

¶ 36　　　　　　　　　　　　　　　　ANALYSIS

¶ 37　　　　The media appellants' first claim is that the trial court erred by failing to vacate the interim decorum order after the Van Dyke jury returned a verdict in October 2018.

¶ 38　　　　Although the media appellants' initial appellate brief argued that the trial court improperly entered the order and asked this court to find that its entry was improper, the media appellants' reply brief clarified that they are challenging only "the *maintenance*" of the interim decorum order "rather than the *entry*" of the order "itself." (Emphasis in original.) The reply brief emphasized that "what this appeal is about" is "the maintenance of the [d]ecorum [o]rder after the jury returned its verdict."

¶ 39　　　　The media appellants' second claim is that the trial court erred by "maintaining" under seal, after the jury's verdict, the documents regarding defendant's motion to dismiss, and the media appellants ask this court to order the documents' release in unredacted form.

¶ 40　　　　　　　　　　　　　　　I. Jurisdiction

¶ 41　　　　First, we must consider whether we have jurisdiction. A reviewing court has an independent duty to consider its own jurisdiction. *People v. Smith*, 228 Ill. 2d 95, 104 (2008).

Questions concerning appellate jurisdiction are questions of law that are considered *de novo*. *In re Marriage of Kelly*, 2020 IL App (1st) 200130, ¶ 21 (hereinafter *Marriage of Kelly*). Generally, *de novo* consideration means that a reviewing court performs the same analysis that a trial judge would perform. *People v. Aljohani*, 2020 IL App (1st) 190692, ¶ 78. However, "[w]hen there is no ruling below for us to review," *de novo* review means that "our legal consideration is made on a blank slate." *People v. Kirklin*, 2015 IL App (1st) 131420, ¶ 104.

¶ 42                                    A. First Claim: Interim Decorum Order

¶ 43          The media appellants argue that the trial court's order "of May 23, 2019 is the adverse judgment appealed from." As noted above, on May 23, 2019, the trial court (1) orally denied the media appellants' motion to reconsider the April 10 order and (2) issued a written order maintaining a few documents under seal. We consider first our jurisdiction over the denial of the motion to reconsider.[5]

¶ 44          The basis for our jurisdiction is significant because, if the proper basis for jurisdiction is Illinois Supreme Court Rule 307, then we lack jurisdiction with respect to the media appellants' first claim. Rule 307 does not provide jurisdiction over the media appellants' motion to join Smith's motion to intervene and vacate because it is well established that, under Rule 307, a motion to reconsider does not toll the time to appeal. *E.g.*, *In re Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 39 (citing a number of cases); Ill. S. Ct. R. 307(a)(7) (eff. Nov. 1, 2017) ("the appeal must be perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal"). Thus, the media appellants' time to appeal

_____

[5] In their appellate brief filed January 8, 2020, the media appellants stated specifically that they were appealing "from the May 23, 2019 Final Order denying Intervenors' Motion to Reconsider."

under Rule 307 expired 30 days after the entry of the original April 10, 2019, order, or on May 10, 2019, and the media appellants did not appeal until over a month later, on June 21, 2019.[6]

¶ 45    The State concedes that we have jurisdiction pursuant to Rule 303. However, a concession by the State does not confer jurisdiction upon us. As we noted above, a reviewing court has an independent duty to consider its own jurisdiction. *Smith*, 228 Ill. 2d at 104. The filing of a notice of appeal is the jurisdictional step that initiates review. *Smith*, 228 Ill. 2d at 104. Without a properly filed notice, "a reviewing court has no jurisdiction over the appeal and is obliged to dismiss" the appeal. *Smith*, 228 Ill. 2d at 104.

¶ 46    In *People v. Kelly*, 397 Ill. App. 3d 232 (2009) (hereinafter *R. Kelly*) , we set forth the proper vehicle for appealing a denial of access to the media in a criminal case. That vehicle was an immediate appeal pursuant to Rule 307. *R. Kelly*, 397 Ill. App. 3d at 247.

¶ 47    The parties were well aware of our decision in the *R. Kelly* case. They cited to it and quoted from it repeatedly in the court below. After the *R. Kelly* case, our supreme court decided the *Zimmerman* case, which also found Rule 307 to be the proper vehicle for providing jurisdiction to the appellate court. *Zimmerman*, 2018 IL 122261, ¶ 20. The media appellants moved the trial court to consider *Zimmerman*, only eight days after it was decided, and thus, they were aware that it was instructive in conferring jurisdiction in access-to-the-media cases. Yet, they chose to wait to file their notice of appeal.

¶ 48    In *R. Kelly*, this court affirmed on appeal a "Decorum Order," issued by the same trial judge, that is virtually identical to the interim decorum order entered here. *R. Kelly*, 397 Ill.

_____

[6] In addition, the denial of the media appellants' motion to reconsider was entered *nunc pro tunc* as of April 10, 2019. Thus, even if the media appellants' ability to appeal this issue was alive and well on May 23, 2019, it vanished when the trial court entered the denial, without any objection, *nunc pro tunc* back to April 10, 2019.

App. 3d at 270 ("we find that the trial court's Decorum Order was not an abuse of discretion by the trial court"). Compare *R. Kelly*, 397 Ill. App. 3d at 239-40 (quoting the *R. Kelly* decorum order in full), with *supra* ¶ 7 (quoting the decorum order in the instant case).[7] The *R. Kelly* intervenors included at least two of the appellants before us now, represented by at least one of the same counsel. Unlike here, the *R. Kelly* intervenors filed their own independent motion to vacate, and unlike here, they appealed the denial of that motion within 30 days pursuant to Rule 307. *R. Kelly*, 397 Ill. App. 3d at 240-41. In *R. Kelly*, we stated that "the question" before us was "whether the path to review" for a media intervenor denied access was "Supreme Court Rule 307(a) or some other rule or statute." *R. Kelly*, 397 Ill. App. 3d at 245.

¶ 49    Rule 307(a) provides that "[a]n appeal may be taken to the Appellate Court from an interlocutory order of court: (1) granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." Ill. S. Ct. R. 307(a)(1) (eff. Nov. 1, 2017). "[A] trial court's order denying access to a media intervenor is 'in the nature of injunctive relief.' " *R. Kelly*, 397 Ill. App. 3d at 245 (quoting *A.P. v. M.E.E.*, 354 Ill. App. 3d 989, 990-91 (2004)).

¶ 50    After an exhaustive review of precedent, we found, unequivocally, that Rule 307 is and has been "the appropriate vehicle" in this state for an appeal by media intervenors denied access to documents that they may find to be newsworthy. *R. Kelly*, 397 Ill. App. 3d at 248, 250 (noting the media's interest in " 'newsworthy' " documents).

¶ 51    Citing our decision in *R. Kelly* with approval, the supreme court also found that "Rule 307(a)(1) has long been the vehicle in Illinois for appellate review of orders denying access to criminal records or proceedings." *Zimmerman*, 2018 IL 122261, ¶ 20. The State in *Zimmerman*

_____

[7] Appellants concede in their appellate brief that the interim decorum order in the instant case "substantially tracks the order in" the *R. Kelly* case.

asked the supreme court "to refer the issue to our rules committee for consideration of the proper vehicle for reviewing orders denying access to criminal records or proceedings." *Zimmerman*, 2018 IL 122261, ¶ 21. However, our supreme court "f[ou]nd that unnecessary," given that the proper vehicle was already well established in our state as Rule 307. *Zimmerman*, 2018 IL 122261, ¶¶ 21-22.

¶ 52      The media appellants also argue that we have jurisdiction pursuant to Rule 303 and that their notice of appeal deprived the trial court of jurisdiction to vacate the interim decorum order—but that the earlier notice of appeal filed by defendant Van Dyke did not.

¶ 53      In support of their argument that the trial court lacked jurisdiction, the media appellants cite *Daley v. Laurie*, 106 Ill. 2d 33, 37 (1985), but that case actually undercuts their argument. In *Laurie*, the supreme court found that, once the criminal defendant had filed his notice of appeal, the trial court lacked jurisdiction to entertain any further motions in the case. The supreme court explained that, after a notice of appeal is filed in a criminal case, "the cause is beyond the jurisdiction of the trial court." *Laurie*, 106 Ill. 2d at 38.

¶ 54      Their argument illustrates the wisdom of not relying on Rule 303 in media intervenor cases—what is final to one will not be final to another, as shown by Smith's and the State's later motions and the grant of the very relief that the media appellants claim they sought. The media appellants fail to explain why their notice of appeal would cut off the trial court's jurisdiction with respect to Smith or the State, any more than defendant's notice of appeal would cut off jurisdiction with respect to them.[8]

---

[8] The two cases cited by the media appellants in their reply brief do not address the issues raised by two notices of appeal. In *Cain v. Sukkar*, 167 Ill. App. 3d 941, 945 (1988), no notice of appeal had been filed prior to the motion at issue. In *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173-74 (2011), our supreme court found that the circuit court retains jurisdiction to consider certain matters after

¶ 55        Rule 303(a)(1) provides in relevant part that

> "[t]he notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from, or, if a timely posttrial motion directed against the judgment is filed, *** within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017).

The media appellants filed their notice of appeal within 30 days of the May 23, 2019, orders; so, if Rule 303 applied, then their notice would be timely.

¶ 56        The media appellants claim that they joined in Smith's motion to intervene and to vacate, that this motion was denied on April 10, 2019, and that they filed a motion to reconsider that was denied on May 23, 2019. If one strains to apply the language of Rule 303 to these facts in order to find jurisdiction over the media appellants' claim to vacate, then "the final judgment" becomes the order on April 10 denying the motion to intervene and to vacate, and the media appellants' motion to reconsider must then be a "posttrial motion directed against the judgment." Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). A denial merely to "reconsider" is obviously not a final judgment unto itself; the final judgment is what the court was being asked to reconsider.

¶ 57        The problem with trying to cast the April 10 order as a "final judgment" regarding the media appellants is, of course, the problem observed below by the trial court itself—there never was a pending motion to vacate for them to join. Ill. S. Ct. R 303(a)(1) (eff. July 1, 2017). In a short four-paragraph document, the media appellants merely asked to "join in" Smith's motion.

---

the filing of a notice of appeal, such as a stay of judgment, a petition of fees or costs, or the award of judgment interest. Neither case addressed issues relating to two notices of appeal, injunctions or interlocutory orders, or unrelated parties.

However, once his motion to intervene was denied, there was no pending motion to vacate for the media appellants to join in. Therefore, their theory is contrary to the law, as made and provided.

¶ 58    If it is the written order concerning the 18 documents that is considered "the final judgment" for purposes of Rule 303, then the April 10 order denying Smith's motion to intervene must be considered a necessary step to this order, for us to have jurisdiction over it. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 43 (an appeal is deemed to include an interlocutory order if it was a necessary step in the procedural progression to the order before us); *Filliung v. Adams*, 387 Ill. App. 3d 40, 50 (2008). However, we fail to see how the denial of another's motion to intervene could be considered a "necessary step" in the resolution of the media appellants' already pending motion regarding a short list of specified documents. See *Marriage of Kelly*, 2020 IL App (1st) 200130, ¶¶ 23-25 (where a trial court's prior orders denying access to media intervenors were immediately appealable under Rule 307, appellate court lacked jurisdiction to consider these prior orders, although intervenors had appealed 30 days after the trial court's last and final order).

¶ 59    Straining to fit this case into the words of Rule 303 shows the wisdom of handling these types of matters under Rule 307. This is, after all, a criminal case. The parties are the State and defendant. The "final judgment" in this criminal case was the conviction and sentence entered against defendant Van Dyke. The media appellants are not parties to the criminal case but rather are intervenors who are trying to protect their first amendment rights and the first amendment rights of the public by challenging injunctions against access and release of information. On appeal, those challenges are best handled, as we and the supreme court have

21

both found, through Rule 307. Since an appeal under Rule 307 is untimely, we lack jurisdiction to consider the appeal of the trial court's denial of the media appellants' motion to reconsider the denial of their motion to join in Smith's motion to intervene and vacate. [9]

¶ 60    The media appellants also ask us to consider the possibility of jurisdiction under Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001), which governs appeals in criminal cases. Rule 605 provides, in relevant part, that "the right to appeal the judgment of conviction *** will be preserved only if a notice of appeal is filed in the trial court within thirty (30) days from the date on which sentence is imposed." Ill. S. Ct. R. 605(a)(3)(A) (eff. Oct. 1, 2001). In their initial brief, the media appellants argued: "to the extent this Court treats this case as a criminal appeal because it arises from a criminal case, the Court has appellate jurisdiction pursuant to Illinois Supreme Court Rule 605." However, to the extent that this was a criminal case, final judgment was entered on January 18, 2019, when defendant Van Dyke was sentenced. Van Dyke filed a notice of appeal on February 8, 2019, and any rights the media appellants possibly had to appeal under Rule 605 expired 30 days after the entry of the final judgment in his case. We observe that, in their reply brief, the media appellants do not argue for jurisdiction under Rule 605.

¶ 61    For all the above reasons, we do not have jurisdiction to consider the media appellants' first claim regarding the trial court's oral denial of their motion to reconsider the denial of Smith's motion to intervene and vacate.

---

[9] Yet another advantage of handling media access orders pursuant to Rule 307 is it removes the fear of reinvesting the trial court with jurisdiction. In their appellate brief, the media appellants observe that they did not appear in subsequent proceedings after filing a notice of appeal from the "final" decision, for fear of reinvesting the trial court with jurisdiction and jeopardizing their appeal. If each media access order is considered as an interlocutory order, that fear is eliminated, allowing both the parties and the courts greater flexibility.

¶ 62                                    B. Order Denying Release of 18 Documents

¶ 63            We do, however, have jurisdiction under Rule 307 to consider the appeal of the trial

court's written order, also entered on May 23, 2019, denying the release of 18 listed documents.

The notice of appeal of that interlocutory order was timely filed under Rule 307, less than 30

days after the order was entered.

¶ 64                                            II. Dismissal Documents

¶ 65            Although the order covered 18 documents, the media appellants challenge the order on

appeal with respect to only 8 documents and ask this court to order the release of these 8

documents in "full" or unredacted form.

¶ 66            When reviewing the denial of a motion by media intervenors to unseal a court file, we

review the trial court's decision only for an abuse of discretion, whether the claimed right of

access is based on the first amendment, common law, or statute. *Marriage of Kelly*, 2020 IL

App (1st) 200130, ¶ 32; *R. Kelly*, 397 Ill. App. 3d at 256; see also *Zimmerman*, 2018 IL 122261,

¶ 44 ("the trial court did not abuse its discretion by allowing" certain documents "to remain

sealed"); *Skolnik v. Altheimer & Gray*, 191 Ill. 2d 214, 233 (2000). An abuse of discretion

occurs when the trial court's decision is arbitrary, fanciful, or unreasonable or where no

reasonable person would take the position adopted by the trial court. *People v. Thompson*, 2020

IL App (1st) 171265, ¶ 84.

¶ 67            In their initial appellate brief, the media appellants describe the documents at issue as

"the eight documents filed with the Circuit Court concerning motions to dismiss the indictment

based on allegation of misconduct by the State's Attorney." Although the subsequently

released 18 documents are part of the appellate record, the media appellants do not provide

record citations for the particular 8 documents that they are disputing. The 18 documents have

titles and are stamped with the dates that they were filed in the circuit court, but the media appellants do not identify the disputed documents by either title or filing date.

¶ 68        In its response brief, the State argues that the "eight" documents that the media appellants seek are actually the seven documents that the media appellants listed on March 15, 2019, in their "Status Report," as documents concerning defendant Van Dyke's motion to dismiss the indictment for misconduct. The media appellants' "Status Report" listed 21 documents, by title and filing date, that were still under seal at that time, and the first 7 listed concerned defendant Van Dyke's motion to dismiss the indictment for misconduct. The State's appellate brief lists these 7 documents by title, by filing date in the circuit court, and by citation of the appellate record.

¶ 69        In their reply brief, the media appellants acknowledge that the State might be right and that it is "possible" that there are only seven. The media appellants claim that "the lack of clarity" is due to the "secrecy surrounding the record." However, the special prosecutor represented to the trial court that only 18 documents remained under seal as of September 2019 and moved to unseal and release all of them, which the trial court then ordered. Thus, all 18 previously sealed documents have now been released in redacted form and can be identified by title and filing date. Since the media appellants have chosen not to specifically identify the documents that they are challenging, we are persuaded by the State's reasoning that there are only 7 in dispute and that those are the 7 listed in the media appellants' status report and in the State's appellate brief.

¶ 70        The State argues that the media appellants' claims are forfeited. Forfeiture is " 'the failure to make the timely assertion of [a] right.' " *People v. Sophanavong*, 2020 IL 124337, ¶ 20 (quoting *People v. Lesley*, 2018 IL 122100, ¶ 37). The failure of a timely assertion in the

court below results in forfeiture of the issue on review. *Matthews v. Avalon Petroleum Co.*, 375 Ill. App. 3d 1, 8 (2007).

¶ 71 With respect to the redactions, the media appellants repeatedly suggested redacting to the trial court as a solution.

¶ 72 On April 10, 2019, when the State objected to the release of certain documents on the ground that they contained grand jury material and the trial court agreed, the media appellants pleaded: "Would you please reconsider and consider redacting grand jury information [?]" The media appellants argued that "the least restrictive means would warrant redactions if there's a reference to grand jury materials."

¶ 73 On May 23, 2019, the media appellants were the ones who raised the topic of redacting, informing the trial court that they were in favor of redacting "the materials relating to the motions to dismiss the indictment based on alleged misconduct before the Grand Jury"—*i.e.*, the documents at issue now. The media appellants stated that the prosecutor had described to them prior to court on May 23 how "he was prepared to make redactions." The State then described for the court how it planned to redact, namely, that it would redact the names of grand jury witnesses and quotes from their testimony. 725 ILCS 5/112-6 (West 2018) (prohibiting disclosure of grand jury matters); *Press-Enterprise Co. v. Superior Court of California for Riverside County*, 478 U.S. 1, 9 (1986) (the right of public access does not apply to grand jury proceedings). The media appellants do not claim that the State's redaction process differed from how it was described, nor can we find that it did. Generally, appellants' claims regarding the State's redactions would be considered either forfeited or invited error. "A party cannot invite an error by the trial court and then use it as a basis for appeal." *Direct Auto Insurance Co. v. Bahena*, 2019 IL App (1st) 172918, ¶ 36. In the case at bar, appellants

repeatedly invited the trial court to redact references to the grand jury, and so an argument can be made that the media appellants cannot complain now about those redactions on appeal. However, we understand that the reason that they asked for the redacted documents was because they wanted to review them for newsworthy purposes and never intended to give up their claimed right to the unredacted material. *Cf. R. Kelly*, 397 Ill. App. 3d at 249 (discussing the media's interest in " 'newsworthy information' " (quoting *In re A Minor*, 127 Ill. 2d 247, 257 (1989))). Thus, we do not find forfeiture or invited error.

¶ 74          The seven documents are

1. Defendant Van Dyke's "Motion to Dismiss the Indictment for Misconduct at Grand Jury," filed February 3, 2017;

2. Defendant Van Dyke's "Memorandum of Law in Support of Motion to Dismiss the Indictment," filed February 3, 2017;

3. "People's Response and Motion to Clarify Defendant's Motion to Dismiss the Indictment and/or Other Relief Pursuant to *Garrity v. New Jersey*," filed February 3, 2017;

4. Defendant Van Dyke's "Motion to Dismiss the Indictment And/Or Other Relief," filed April 20, 2017;

5. Defendant Van Dyke's "Motion to Dismiss the Indictment," filed April 20, 2017;

6. Defendant Van Dyke's "Memorandum of Law in Support of Motion to Dismiss the Indictment," filed April 20, 2017; and

7. "People's Combined Response to Defendant's Motion to Dismiss the Indictment and Motion to Dismiss the Indictment And/Or Other Relief," filed May 11, 2017.

¶ 75        After reviewing the full, unredacted copies of the above listed documents for our *in camera* review, we find that the redactions consisted of (1) in item No. 1, the name of a grand jury witness, questions and testimony before the grand jury, and citations of the appropriate pages; (2) in item No. 2, grand jury questions, discussions and testimony, and the names of grand jury witnesses; (3) in item No. 4, the name of a grand jury witness and his testimony;[10] (4) in item No. 5, the name of a grand jury witness; and (5) in item No. 7, the names of grand jury witnesses, grand jury testimony, statements by the prosecutor before the grand jury, and descriptions of grand jury evidence.

¶ 76        With respect to item No. 6 listed above, the special prosecutor released two redacted documents on September 4, 2019, that were both titled defendant Van Dyke's "Memorandum of Law in Support of Motion to Dismiss the Indictment." One was file-stamped April 20, 2017, and the other was not file-stamped. The file-stamped copy is 10 pages, and the one that is not file-stamped is only 5 pages. The longer version appears to elaborate on the shorter version, and the State listed the longer version as the document that the media appellants sought, rather than the shorter version. However, when the circuit court produced the sealed, unredacted copies for our inspection, it provided us only with the shorter version. This omission did not adversely affect our independent *in camera* review, since the only redaction in the longer document was the name of one Federal Bureau of Investigation (FBI) agent who testified before the grand jury. The shorter version had no redactions at all.

¶ 77        With respect to item No. 3 listed above, the document is three pages long, and the appellate record is missing the second and fourth pages of the redacted version. Thus, we do

---

[10] Not all of his testimony was redacted from the document.

not know what was redacted on those two pages. However, the only words redacted from the rest of the document is the name of an FBI agent.

¶ 78      When faced with a request for media access, a trial court generally determines, first, whether a presumption of public access applies to the particular type of information sought. *R. Kelly*, 397 Ill. App. 3d at 255. This is a purely legal question that is reviewed *de novo*. *R. Kelly*, 397 Ill. App. 3d at 255. *De novo* consideration means that we perform the same analysis that a trial judge would perform. *People v. Knight*, 2020 IL App (1st) 170550, ¶ 37. If the trial court finds the presumption applies, then it determines whether the presumption is rebutted by other concerns. *R. Kelly*, 397 Ill. App. 3d at 255. "In deciding to deny access to certain proceedings and records for a certain length of time, the trial court ha[s] to craft a careful and delicate balance among competing interests." *R. Kelly*, 397 Ill. App. 3d at 256. "To this balancing of interests and determining of parameters, we apply an abuse of discretion standard" of review. *R. Kelly*, 397 Ill. App. 3d at 256. An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the position adopted by the trial court. *People v. Thompson*, 2020 IL App (1st) 171265, ¶ 84. A presumptive right of public access does not attach to grand jury proceedings. *Press-Enterprise Co.*, 478 U.S. at 9.

¶ 79      On appeal, appellants argue that the grand jury materials should be released in full, based on the following set of propositions. First, appellants observe that grand jury materials are routinely used in trials to impeach witnesses.[11] Second, they argue, without citation of a statute or a case, that grand jury transcripts used at trial become "public." Third, arguing by

---

[11]In support of this proposition, the media appellants cite a case, *People v. Robinson*, 368 Ill. App. 3d 963, 980 (2006), in which the appellate court quoted a question and answer from a witness's grand jury testimony.

analogy to their unsupported second proposition, appellants claim that this court should apply "[t]he same principle" to grand jury transcripts used to support or oppose pretrial motions. Without supporting statutory or case law, we do not find their argument persuasive.

¶ 80    In addition, the media appellants do not argue that they were prejudiced by the two-month delay between their filing a notice of appeal and the trial court's grant of the relief they requested, namely, the release of the documents. Although even a short denial of access may implicate important first amendment concerns (*R. Kelly*, 397 Ill. App. 3d at 247), the media appellants needed to articulate the concerns present during the delay. *R. Kelly*, 397 Ill. App. 3d at 250 (observing that a newspaper has an interest in " 'newsworthy information' " (quoting *In re A Minor*, 127 Ill. 2d at 257)). During these two months, defendant Van Dyke's trial was over, and no briefs were filed in his appeal.[12] Prior to that period, the record established that all parties were actively trying to reach an agreement concerning the disputed documents, which was largely successful, and we cannot find error by the trial court in allowing this process to proceed. A decorum order is like a permanent injunction and lasts, as all permanent injunctions do, until it is lifted. However, it is a good idea for a trial judge to include an end date, if it meets the ends of justice.

¶ 81    The media appellants argue that the need to maintain grand jury secrecy was greatly diminished one year after the verdict and cite in support *In re Appointment of Special Prosecutor*, 2019 IL 122949, ¶ 32. However, that case stands for just the opposite. In that case, our supreme court found that a party seeking release of grand jury material must demonstrate a particularized need for the material that outweighs the policies supporting secrecy. *Special*

---

[12]No briefs were filed in the appeal of defendant Van Dyke's conviction, and the appeal was ultimately dismissed upon his motion to dismiss. *People v. Van Dyke*, No. 1-19-0398 (Oct. 9, 2020).

*Prosecutor*, 2019 IL 122949, ¶ 47. The appellant in that case had argued that disclosure of grand jury witnesses and statements would "serve the public interest in detecting and deterring political and prosecutorial corruption." *Special Prosecutor*, 2019 IL 122949, ¶¶ 48, 39. Our supreme court found "[s]uch generalized statements do not constitute 'particularized need' " and affirmed the denial of the release of seven-year-old grand jury material. *Special Prosecutor*, 2019 IL 122949, ¶¶ 48-49. This case does not help the media appellants.

¶ 82    The media appellants also cite the Seventh's Circuit decision in *Carlson v. United States*, 837 F.3d 753 (7th Cir. 2016), which bears little resemblance to our case. In *Carlson*, a World War II historian was writing a book and sought grand jury materials from almost 75 years ago. *Carlson*, 837 F.3d at 756-57. The Seventh Circuit found that the courts, as part of their limited and inherent supervisory power over the grand jury, had the discretion to release these historical records, and the government conceded that the district judge did not abuse his discretion in doing so. *Carlson*, 837 F.3d at 755-56, 767. In its brief to this court, the media appellants quoted the part of the decision where the court found that the historian had the right "to petition" for access. *Carlson*, 837 F.3d at 759. However, in almost the next line, the court also found that "his petition is not guaranteed to be granted." *Carlson*, 837 F.3d at 759.[13]

¶ 83    In sum, we are not persuaded by this claim due to a lack of error on the part of the trial court. Historically, documents pertaining to matters before the grand jury are not the type of material that is given to the media because those proceedings are protected by statute and common law. See 725 ILCS 5/112-6 (West 2018) ("Secrecy of proceedings"); *Special Prosecutor*, 2019 IL 122949, ¶ 31 ("The rule of secrecy surrounding grand jury proceedings is

---

[13]The media appellants also cite *Lucas v. Turner*, 725 F.2d 1095, 1109 (7th Cir. 1984), which denied the release of grand jury materials, on the ground that plaintiffs failed to "demonstrate[ ] that they have conducted prompt, thorough and exhaustive discovery before seeking the materials protected by grand jury secrecy."

a common-law concept recognized as a fundamental component of both federal and state criminal procedural law."); *Press-Enterprise Co.*, 478 U.S. at 8-9 (the grand jury is the "classic example" of a government proceeding where the right of public access does *not* apply).

¶ 84                    III. Validity of the Trial Court's September 2019 Order

¶ 85        Lastly, the media appellants argue that the trial court's September 2019 order is invalid, because the court lacked jurisdiction in September 2019 to modify its May 2019 order to permit release of the 18 documents.

¶ 86        The media appellants argue that the trial court lacked jurisdiction because (1) the media appellants had filed a notice of appeal and (2) there were no changed circumstances between May and September 2019. With respect to the first argument, we already observed above that the media appellants fail to explain why their notice of appeal would cut off the trial court's jurisdiction with respect to Smith and the State, any more than the filing of defendant Van Dyke's notice would cut off jurisdiction with respect to them. Defendant Van Dyke was also an interested party with respect to the interim decorum order. In *R. Kelly*, when we explained the advantages of treating access orders as interlocutory orders appealable under Rule 307, rather than as final declaratory judgments, we explained that (1) "the criminal defendant, who has an interest in the disclosure issue, is already before the court with counsel" and (2) unlike a declaratory judgment which is final, an interlocutory order can "adapt to the unfolding and possibly shifting needs of a criminal case." *R. Kelly*, 307 Ill. App. 3d at 244-45; see also *Zimmerman*, 2018 IL 122261, ¶ 20 (Rule 307 is "the vehicle in Illinois for appellate review of orders denying access to criminal records or proceedings"); *Marriage of Kelly*, 2020 IL App (1st) 200130, ¶ 23 (where media intervenors failed to appeal within 30 days as Rule 307 required, this court lacked jurisdiction to review an access order). In essence, appellants are

31

trying to turn the trial court's May 2019 order into a final declaratory judgment between just them on one side and the State on the other—a procedure that we already rejected in the *R. Kelly* case because the appellants before us are simply not the only interested parties.

¶ 87     Thus, we are not persuaded by appellants' argument that their notice of appeal cut off the trial court's jurisdiction to enter the September 2019 order.

¶ 88     With respect to appellants' second argument concerning changed circumstances, both parties cite *Bundy v. Chicago League of America*, 125 Ill. App. 3d 800, 806 (1984), where the appellate court found that a trial court lacked jurisdiction to modify a permanent injunction in the absence of changed circumstances in law or facts.

¶ 89     In *Bundy*, the parties reached an agreement that led to the trial court's entry of an agreed order that included a permanent injunction. *Bundy*, 125 Ill. App. 3d at 802, 805. Nine months later, without a request pending from either party, the trial court *sua sponte* dissolved the permanent injunction. *Bundy*, 125 Ill. App. 3d at 801-02. One of the parties appealed from the dissolution order within 30 days pursuant to Supreme Court Rule 307. *Bundy*, 125 Ill. App. 3d at 802. The appellate court found that the trial court lacked jurisdiction to *sua sponte* dissolve a permanent injunction in an agreed order without changed circumstances. *Bundy*, 125 Ill. App. 3d at 807.

¶ 90     The *Bundy* case bears little resemblance to our case. In the case at bar, the original 2016 order was titled an "interim" order rather than a permanent injunction; the trial court did not act *sua sponte* when it dissolved the interim order in September 2019. By doing so, the trial court provided relief previously requested by appellants and subsequently requested, or at least unopposed, by all parties. As noted above, although formally notified of the continuing proceedings, appellants did not seek a stay.

¶ 91    To the extent that changed circumstances were required to dissolve an "interim" order—and we do not find that they were—those changed circumstances were the fact that prior objections by the city and defendant had evaporated. On May 23, 2019, when the State proposed a way to redact the disputed documents, defendant Van Dyke's attorney had objected to factual assertions made by the State. By contrast, on September 4, 2019, defendant Van Dyke's attorney attended and voiced no objection, and the counsel for the City of Chicago supported the State's motion.

¶ 92    Appellants argue that the State failed to argue changed circumstances before the trial court in September 2019. But why would the State make such an argument when everyone was on notice of the State's proposed order and no one was objecting to its entry?

¶ 93    Thus, we do not find persuasive appellants' claim that the trial court's September 2019 order was invalid.

¶ 94                                    CONCLUSION

¶ 95    For the foregoing reasons, we find (1) that we lack jurisdiction to consider appellants' first claim concerning their motion to join in another journalist's motion to intervene and to vacate; (2) that, with respect to their second claim, the trial court did not err in delaying release of the disputed documents or in releasing them as redacted; and (3) that the trial court had jurisdiction in September 2019 to modify its prior interim order. Thus, we dismiss the first claim and affirm the dismissal of the second.

¶ 96    Affirmed in part and dismissed in part.

**No. 1-19-1384**

| | |
|---|---|
| **Cite as:** | *People v. Van Dyke*, 2020 IL App (1st) 191384 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-CR-4286; the Hon. Vincent M. Gaughan, Judge, presiding. |
| **Attorneys for Appellant:** | Brendan J. Healey, of Baron Harris Healey, of Chicago, for appellants WLS Television, Inc., WFLD Fox 32 Chicago, and WGN Continental Broadcasting Company.<br><br>Natalie J. Spears and Gregory R. Naron, of Dentons US, LLP, of Chicago, for appellant Chicago Tribune Company, L.L.C.<br><br>Jeffrey D. Colman, Michael T. Brody, Catherine L. Doyle, and Christina T. Lopez, of Jenner & Block LLP, of Chicago, for appellant Chicago Public Media, Inc.<br><br>Damon E. Dunn, of Funkhouser Vegosen Liebman & Dunn Ltd., of Chicago, for appellant Sun-Times Media, L.L.C. |
| **Attorneys for Appellee:** | Joseph H. McMahon, State's Attorney, Special Prosecutor, of St. Charles (Michelle Katz, Assistant State's Attorney, of counsel), for the People. |